# UNITED STATES DISTRICT COURT
## for the
### Southern District of Ohio

| | |
|---|---|
| United States of America<br>v.<br>Racheal M. BRANE,<br>aka "Racheal Johnson,"<br>aka "Racheal Brane Johnson,"<br>aka "Rae"<br><br>*Defendant(s)* | Case No. 2:22-mj-654 |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of  January 22, 2021 - June 21, 2021  in the county of  Franklin  in the Southern District of  Ohio , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(C) | Conspiracy to Distribute and Possess with Intent to Distribute Fentanyl and Cocaine |
| 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C) | Distribution of Fentanyl and Cocaine Resulting in Death - February 2, 2021 |
| 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), 18 U.S.C. § 2 - three counts | Distribution of Fentanyl - June 8, 2021; June 17, 2021; and June 21, 2021 |

This criminal complaint is based on these facts:

Please see the attached affidavit, which is fully incorporated herein by reference.

☑ Continued on the attached sheet.

*Complainant's signature*

Jonathan E. Baer, DEA Task Force Officer
*Printed name and title*

Sworn to before me and signed in my presence.

Date: October 3, 2022

City and state: Columbus, Ohio

Kimberly A. Jolson
United States Magistrate Judge

**PROBABLE CAUSE AFFIDAVIT**
**Thomas Johnson and Racheal Brane**

I, Jonathan E. Baer, being duly sworn, depose and state that:

I am a Police Officer and Detective with the City of Westerville Division of Police, assigned full-time as a Task Force Officer (TFO) with the Drug Enforcement Administration (DEA), Columbus District Office. As such, I am an "investigative or law enforcement officer" of the United States within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the United States empowered by law to conduct criminal investigations and make arrests for offenses enumerated in 18 U.S.C. § 2516. I have been employed by the City of Westerville as a "Law Enforcement Officer," as defined in the Ohio Revised Code Section 2901.01, since March 2004. I am empowered to investigate, to make arrests with or without warrants, and to execute search warrants under the authority of 21 U.S.C. § 878 and the Ohio Revised Code.

Prior to being assigned to the DEA Task Force, I was assigned to the City of Westerville Police Division, Patrol Bureau between March 2004 and March 2014.

Below is a non-exhaustive list of my training and experience:

(a) I graduated from the Ohio State Highway Patrol Academy located in Columbus, Ohio in June 2004. I received approximately 16 weeks of specialized police training including but not limited to: search and seizure, investigative techniques, testifying in court, evidence collection, interview and interrogation, and controlled substance identification.

(b) I have received additional training in federal money laundering and asset forfeiture, methamphetamine production, and gang enforcement.

(c) During the course of my law enforcement career, I have had experience in debriefing defendants and interviewing participating witnesses, cooperating individuals and other persons who have personal knowledge and experience regarding the amassing, spending, conversion, transportation, distribution, and concealment of records and proceeds of trafficking in controlled substances. Furthermore, I am fluent in Spanish and I have had extensive experience debriefing and interviewing suspects, victims, and witnesses in Spanish.

(d) As a DEA TFO and police officer, I have participated in the execution of numerous search warrants at the residences and businesses of narcotics traffickers, safe houses, crack houses, and have participated in numerous arrests for drug related offenses. I have drafted numerous search warrants.

As a DEA TFO, I have participated in investigations targeting individuals and organizations trafficking heroin, cocaine, cocaine base ("crack"), marijuana, methamphetamine, fentanyl, and other controlled substances, as defined in 21 U.S.C.§ 801.

As a result of my training and experience, I am familiar with state and federal laws pertaining to narcotics violations and money laundering, among other offenses.

**PROBABLE CAUSE AFFIDAVIT**
**Thomas Johnson and Racheal Brane**

1. This affidavit is being submitted in support of an application for a criminal complaint against Racheal M. BRANE, aka Racheal Johnson, aka Racheal Brane Johnson, aka Rae (hereinafter referred to as BRANE) for various drug-related charges, specifically one count of Conspiracy to Distribute and Possess with Intent to Distribute Fentanyl and Cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(C); one count of Distribution of Fentanyl and Cocaine Resulting in Death, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C); and three counts of Distribution of Fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). All of the below-described events occurred within the Southern District of Ohio.

2. The facts set forth within this affidavit come from my own personal involvement with the investigation, as well as information provided by other law enforcement officers and reports. The information outlined below does not contain all details or all facts of which I am aware relating to this investigation, but rather is provided for the limited purpose of establishing probable cause that BRANE committed these offenses.

3. On February 3, 2021, at approximately 10:00 a.m., M.B.W., age 22, was found dead in her bedroom, which was in the basement of her parents' house in Gahanna, Ohio. When her body was discovered, M.B.W. was lying on her back on her bed, with her legs hanging off the side of the bed. M.B.W was completely dressed in winter clothing, wearing a winter hat, coat, and shoes. She looked as if she had just come inside from being outside and had not removed any of her winter gear before using the drugs that ultimately killed her. She had a "bindle" (which is a small piece of a wrapper or paper used by drug dealers to package powdered drugs) in her left hand. Additional bindles were discovered near M.B.W.'s body and inside M.B.W.'s purse, which was located nearby; these bindles were in a small plastic baggie, which is common packaging used by illegal drug distributors. There were also prescription pill bottles in her bedroom, but it was verified that the prescriptions for those medications were issued by licensed physicians and were valid.

4. On February 4, 2021, an autopsy was conducted at the Franklin County Coroner's office by Dr. Kevin Jenkins, M.D. The cause of death is listed as "intoxication by fentanyl and cocaine" with a time interval listed as "minutes". It is believed M.B.W. died within minutes of ingesting the fentanyl and cocaine. Moreover, the coroner's office seized and tested the drugs found in M.B.W.'s hand, near M.B.W.'s body, and in M.B.W.'s purse. The papers found in M.B.W.'s left hand were positive for fentanyl and cocaine; a paper bindle of white powder in a baggie found near M.B.W.'s body was positive for fentanyl and 4-ANPP; and a baggie of papers found in M.B.W.'s purse was positive for cocaine, lidocaine, and tramadol.

5. While processing the scene, the detectives noticed that a cell phone and tablet were on the nightstand in M.B.W.'s bedroom. While they were in the bedroom, the detectives saw a Facebook Message pop up on the cell phone's home screen asking "is the dope you get from rock grey powder with white rocks[?]" Notably, Thomas S. JOHNSON, aka "Rock" (hereinafter referred to as JOHNSON), who is now deceased, was BRANE's husband and coconspirator during this time.

6. A search warrant was obtained for the cell phone. The text message history shows that M.B.W. had been texting with someone saved in her phone as "Rock" with phone number 614-687-7915

**PROBABLE CAUSE AFFIDAVIT**
**Thomas Johnson and Racheal Brane**

since at least January 22, 2021. The text messages were clearly in regards to drug transactions, typically with M.B.W. purchasing fentanyl and cocaine. It should be noted that JOHNSON was arrested on January 20, 2021 and remained in jail through January 27, 2021, so any communications between M.B.W.'s phone and the "Rock" phone during this time necessarily could not have been made by JOHNSON.

7. Additionally, the text message history shows that M.B.W. was texting with someone saved in her phone as "Rae & Rock" with phone number 614-273-4782 on February 2, 2021. Based on a text message received on M.B.W.'s phone from M.B.W.'s associate earlier in the day on February 2, 2021, the phone number 614-273-4782 was identified by the associate as the new phone number for "Rae," who was further identified by the associate as "Rocks girl".

8. Based on the text messages between M.B.W. and the "Rae & Rock" phone on February 2, 2021, M.B.W. had planned to buy "fet" (known to be fentanyl) for $30 and "hw" (known to stand for hard white, or crack cocaine) for $10, for a total of $40. From the text messages on February 2, 2021, it seems that the contact listed as "Rae & Rock" picked up M.B.W at her residence that day because M.B.W. needed to get money out of the ATM and she did not have a means of transportation. At 2:03 p.m., the "Rae & Rock" phone called M.B.W. and the location of the "Rae & Rock" phone at that time was within blocks of M.B.W.'s residence. Then, at 2:11 p.m., M.B.W. texted her father that, "I'll be right back giving this money to my coworker Megan." After picking her up, the "Rae & Rock" phone and M.B.W. went to the PNC Bank ATM, where, as confirmed by bank records, M.B.W. withdrew $40 at 2:17 p.m. The driver is somewhat visible in the video when the vehicle first pulls up to the ATM, and from the times the driver is visible, the driver's appearance is consistent with BRANE. The front seat passenger is less visible than the driver in the video, but the physical characteristics of the person in the front passenger seat that can be seen are consistent with JOHNSON. During the ATM withdrawal, M.B.W. leans outside the back driver's side window, and her face is clearly visible on the ATM video. After M.B.W. obtained the money, M.B.W. can be seen on the video handing something up to what appears to be the driver and receiving something in exchange. The amount of money M.B.W. agreed to pay for the drugs, i.e. $40, matches the amount of B.M.W.'s ATM withdrawal.

9. M.B.W.'s father indicated that he was home both when M.B.W. left the house and returned on February 2, 2021. He said that, when she returned around 2:30 on February 2, 2021, M.B.W. was wearing the exact same clothing in which she was found deceased the next morning. M.B.W.'s mother said she had texted M.B.W. at 3:00 p.m. on February 2, 2021, and M.B.W. responded (they regularly texted each other from within the house); after that text message, neither of the parents heard from M.B.W. again.

## IDENTIFICATION OF THE VEHICLE DRIVEN TO THE PNC BANK ATM

10. ATM video from PNC Bank clearly shows M.B.W. withdrawing money at 2:17 p.m. on February 2, 2021. She is seen withdrawing the money while sitting in the backseat of a vehicle that had two occupants in the front (one in the driver seat and one in the passenger seat). The video was sent to a representative at the Bureau of Motor Vehicles. The BMV representative determined that the vehicle was a 2008-2012 Chevrolet Malibu with an Ohio temporary license plate beginning with the letter "L". Additionally, it is clear that the vehicle had damage to the

**PROBABLE CAUSE AFFIDAVIT**
**Thomas Johnson and Racheal Brane**

back driver side rear window, namely the rear driver side window is broken and has tape over it. Notably, investigators found that a 2009 blue Chevrolet Malibu with Ohio license plate L253073 is registered to "Rachael M Johnson" at 726 Hanford Street; this vehicle matches the description provided by the BMV representative regarding the vehicle in which M.B.W. was riding for the ATM withdrawal. The investigators went to 726 Hanford Street and found the exact same vehicle, with the damage as previously described (i.e. a broken rear driver side window with tape over it), outside, and investigators observed BRANE sitting in the driver seat of the vehicle.

## CELL PHONE MAPPING

11. Search warrants pertaining to the "Rock" (614-687-7915), "Rae & Rock" (614-273-4782), and M.B.W.'s phone numbers were authorized by Franklin County, Ohio Court of Common Pleas Judge Lynch. The search warrants required that the respective phone companies provide law enforcement with data including the historical location information for each phone for the time period of September 1, 2020 through February 19, 2021.

12. Using the above-described information, an OSP Intelligence Analyst provided cell phone mapping information. The first mapping sequence shows the movement of the phone saved as "Rock" in M.B.W.'s phone (614-687-7915) from January 26, 2021 through February 9, 2021. The mapping sequence shows that this phone went to M.B.W.'s address on two dates, January 30, 2021 and February 2, 2021, which matches the text activity for those two dates. The phone did not travel to M.B.W.'s house on any other date during this time period. Moreover, outside of those two dates, with a few exceptions, the phone largely stayed in the general area where BRANE is known to live.

13. On January 30, 2021, after a text series wherein the contact saved as "Rock" (614-687-7915) indicates he / she will be there in 8 minutes, a phone call is placed from the "Rock" phone to M.B.W.; at the time of that call, the "Rock" phone was at M.B.W.'s residence in Gahanna, Ohio.

14. The mapping also shows the movement of both the "Rock" phone (614-687-7915) and the "Rae & Rock" phone (614-273-4782) together on February 2, 2021. The mapping reflects that the phones move together from the general area where BRANE lives in the southeast side of Columbus, the phones go up to M.B.W.'s house in Gahanna, and then the phones come back down to where BRANE lives. M.B.W.'s home in Gahanna and BRANE's home in southeast Columbus are approximately 14 miles apart and are a 25 minute drive from one another (depending on traffic). During a text communication on February 2, 2021, the "Rae & Rock" phone texts that he / she will call when they are close; at 2:03 p.m. a phone call is placed to M.B.W. and the location of the "Rae & Rock" phone at that time was within blocks of M.B.W.'s residence.

## CONTROLLED BUYS

15. At least four buys were conducted with a confidential informant (hereinafter "CI") during June 2021, all of which are described herein, and three of which are charged substantively. For all four buys, the same CI was used. Though the CI is believed to currently not be using illegal drugs, the CI has struggled with drug addiction for more than a year in the past. The CI has no

**PROBABLE CAUSE AFFIDAVIT**
**Thomas Johnson and Racheal Brane**

prior felony convictions and was cooperating with law enforcement in the hopes of favorable treatment based on a possible drug-related criminal charge / interaction with law enforcement and to assist with the investigation. For every buy described below, the CI and the CI's vehicle were searched before and after the buy (no contraband, other than the drugs purchased for that particular buy, was ever found), was provided with prerecorded buy money, and had an audio recording device that recorded each transaction. Additionally, for every controlled buy, law enforcement conducted, surveillance of the buy and took photographs. After every controlled buy, the CI drove directly to a predetermined location to meet with law enforcement and provided the drugs that were just purchased to law enforcement.

16. On June 8, 2021, the CI sent a text message to 614-485-8698, which was communicated to the CI to be BRANE's new phone number. The CI texted that the CI wanted a "half," and wanted to know how much it will cost and where the CI should go to meet BRANE. BRANE responded, "70 behind rally's". The CI asked which Rally's, and BRANE responded, "Parsons". BRANE said they are at the apartments around the back and confirmed that the CI should just pull into the alley behind Rally's. Once the CI arrived, BRANE asked the CI why she did not see the CI. The CI responded that the CI is in a blue SUV. BRANE then sent messages saying, "I sent my aunt" and "Blue top". The CI asked if the CI could get some more tomorrow, and BRANE said the CI could. Law enforcement monitored the entire transaction and took pictures as the buy happened. JOHNSON was observed in the back alley and, before the female (who BRANE referred to as "aunt") approached the CI's vehicle, the female was observed getting something directly from JOHNSON. The CI gave the "aunt" money and the "aunt" gave the CI drugs. The substance sold to the CI was sent to a lab and was determined to be .47 grams of fentanyl and acetyl fentanyl.

17. On June 15, 2021, the CI reached out to BRANE at 614-485-8698 and asked if they could meet up at 2:00 that day. BRANE confirmed and the CI said the CI wanted "140". BRANE did not respond to additional messages sent by the CI and, when the CI called BRANE, her phone went to voicemail. The CI eventually texted BRANE and said, "Rock got me you ok?" BRANE responded that "If rock gave you his number erase it I'm tired of him taking all of my ppl". The CI said, "He did not" and "He told me to call you but when I did it went to vm." BRANE explained her phone died and she had to walk from Broad Street. Law enforcement monitored the entire transaction and took pictures. On the audio recording device provided by law enforcement, the CI talked to someone with a male voice (JOHNSON). Although what JOHNSON said is not audible, after JOHNSON left, the CI got on the recording and explained what JOHNSON told the CI, i.e. that JOHNSON and BRANE got into an argument and BRANE just got out of the car. A male voice (JOHNSON) asked, "How do you want it made up?" and the CI responded, "However she has it is fine. I can split it up however." The CI gave JOHNSON money and JOHNSON gave the CI drugs. The CI said "thank you" and drove to meet up with law enforcement. Based on the pictures law enforcement took, JOHNSON can be seen talking to someone in the driver's side of the CI's vehicle, and also serving various other individuals who drive up. The substance sold to the CI was sent to a lab and was determined to be .59 grams of fentanyl and acetyl fentanyl.

18. On June 17, 2021, the CI reached out to BRANE at 614-485-8698 and asked if they could meet up. BRANE confirmed that would be fine. BRANE asked the CI where the CI is, and the CI

**PROBABLE CAUSE AFFIDAVIT**
**Thomas Johnson and Racheal Brane**

said the CI is close. BRANE said, "Yea I'm waiting I have to go get my son". Law enforcement monitored the entire transaction and took pictures. Based on the pictures law enforcement took, JOHNSON was there, but BRANE was the one who approached the CI's car. BRANE got into the front passenger seat of the CI's car. The CI gave BRANE money and BRANE gave the CI drugs. During this time, multiple people were seen meeting with JOHNSON in the alley. After BRANE got out of the vehicle, BRANE walked over to JOHNSON and they kissed. The substance sold to the CI was sent to a laboratory and was determined to be 1.07 grams of fentanyl and acetyl fentanyl.

19. On June 21, 2021, the CI reached out to BRANE at 614-485-8698 and asked if they could meet up the next day. BRANE confirmed that she could, and the CI said the CI wanted $140 worth of drugs. On June 22, 2021, the CI asked BRANE if they were still on for today, and BRANE did not respond at first. BRANE eventually said that the CI could "meet rock out south he went to pick it up now here's his number y'all can prolyl meet in the middle cause he had to go out east to 6146877915 but don't call him after today u can still come to me i'm just stuck at home today it won't happen again." Later, BRANE said that JOHNSON is going to get her so the CI should call BRANE when the CI is ready. Law enforcement monitored the entire transaction and took pictures. Based on the pictures law enforcement took, JOHNSON is present, but BRANE is the one who approached the CI's car and got into the front passenger seat. The CI gave BRANE money and BRANE gave the CI drugs. The substance sold to the CI was sent to the lab and was determined to be .66 grams of fentanyl and acetyl fentanyl.

## CONCLUSION

20. Based upon the above information, probable cause exists to believe that Racheal M. BRANE, aka Racheal Johnson, aka Racheal Brane Johnson, aka Rae, have committed one count of Conspiracy to Distribute and Possess with Intent to Distribute Fentanyl and Cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(C); one count of Distribution of Fentanyl and Cocaine Resulting in Death, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C); and three counts of Distribution of Fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), and 18 U.S.C. § 2 (June 8, 2021; June 17, 2021, and June 21, 2021).

_____ TFO
JONATHAN E. BAER, DEA TASK FORCE OFFICER

October 3, 2022

Sworn to and subscribed before me this day of _____, _____, at _____ Columbus, Ohio.

_____
Kimberly A. Jolson
United States Magistrate Judge